## Case No. 2,514.

### CATLETT v. COLUMBIAN INS. CO.

[3 Cranch, C. C. 192.] [1]

Circuit Court, District of Columbia. Nov. Term, 1827.

MARINE INSURANCE—ADJUSTMENT OF LOSS.

In adjusting a loss upon a policy for $10,000 on a cargo from Alexandria, D. C. to St. Thomas and two other ports in the West Indies, and back to the U. S., the value of the cargo is to be ascertained at the port from which the vessel

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

last sailed before the loss, and if freight has there been earned and not paid, and is not chargeable upon the salvage, it is an addition to the value of the original cargo, upon which the loss is to be adjusted.

At law. This was an action upon a policy of insurance, dated February 16, 1826, whereby the defendants [the Columbian Insurance Company] insured the plaintiff [C. J. Catlett] $10,000, lost or not lost, at and from Alexandria to St. Thomas and two other ports in the West Indies, and back to her port of discharge in the U. S., upon all kinds of lawful goods and merchandise, laden or to be laden on board the ship Commerce, until the same should be safely landed at St. Thomas, &c. and the United States. The goods and merchandise to be valued as interest might appear. At the trial, a verdict was found, by consent, for the plaintiff, for $10,000, subject to the opinion of the court, upon a demurrer to the evidence. And it was further agreed, that if it should be the opinion of the court that the plaintiff was not entitled to recover the full amount of the insurance, but was entitled to an average loss, a reference should be made to an auditor to ascertain the average, and the verdict should be modified accordingly, subject to exceptions, &c. The reference was made and the report, among other things, charged the freight from Alexandria to St. Thomas upon the salvage; the freight being $2,041.-25. It appeared from the demurrer to the evidence, that the ship sailed from Alexandria, on the 14th of February, 1822, having on board a cargo of 2,297½ barrels of flour, of the invoice price of $15,841.24. The ship and cargo were both owned by the plaintiff. She arrived safe at St. Thomas on the 21st of March, where she continued until the 30th of May, for the purpose of selling her cargo. During this period, the master, who was also consignee, sold by retail 509½ barrels. Being limited by his instructions, to $8 a barrel, and not being able to procure that price for the residue of the cargo, he sailed on the 31st of May, for Cape Haytien, with it, and 30 doubloons, amounting to $480, part of the proceeds of his sales at St. Thomas. The 509½ barrels of flour sold at St. Thomas according to the invoice price, amounted to $3,512.99, leaving the value of the cargo on board, exclusive of the doubloons, at the time of sailing from that port, according to the invoice, at $12.328.25. On the 6th of June, the ship was wrecked off Cape Haytien, and 155 barrels of flour were totally lost; 1,633 were landed; the greater part damaged, and the whole was sold. The gross amount of sales at Cape Haytien, was $9,391.34. The expenses of salvage, including commissions on sales, were $4,124.72. The proportion of the captain's expenses attaching on the cargo was $285.78. Of the proceeds of the sales at Cape Haytien, the sum of $4,953.89 was invested in coffee, which was shipped to Baltimore, where it

produced only $3,517.40. Upon the auditor's report, the circuit court rendered judgment for the plaintiff, for $7,656.57, with interest from October 14, 1822. The defendants carried the cause to the supreme court of the United States, by writ of error, where the judgment was affirmed as to every point, except the charging the freight from Alexandria to St. Thomas against the goods saved, (a point not raised in the court below;) upon which point the judgment was reversed. Mr. Justice Johnson, strongly dissenting. [Columbian Ins. Co. v. Catlett, 12 Wheat. (25 U. S.) 383.] After the opinion of the supreme court was pronounced, it was discovered that the auditor's report was incorrect in some other particulars, and required a different adjustment, and the following additional opinion was subsequently delivered by the court.

"Mr. Justice Story. In consequence of the former opinion delivered in this cause, the parties have found it necessary to readjust the auditor's report in several particulars not suggested at the former argument. Indeed, upon that argument the parties assumed that the report was perfectly correct, except as to the item of freight. We have examined the report, and are satisfied that the original plaintiff is entitled to recover the sum of $6,626.18, with interest from the 14th of October, 1822, which is the residue of the sum of $10,000 insured by the company, deducting the premium note, and the proportion of salvage belonging to the underwriters, which has been received by the original plaintiff; and the judgment of the circuit court is to be reformed accordingly."

The judgment of the supreme court was as follows:

"This cause came on, &c. On consideration whereof, it is ordered and adjudged by the court, that there is error in so much of the judgment, as allowed to the said Catlett, as freight to be deducted from the salvage, the sum of $2,041.25. And it is further ordered and adjudged, that upon reformation of the auditor's report, required by the disallowance of the freight aforesaid, and otherwise, there is now due and payable to the said Catlett, the sum of $6,626.18, together with interest thereon, from the 14th of October, 1822, the said sum being the balance of the sum of $10,000 insured, after deducting the amount of the premium due on the policy, viz. $376, and also the proportion of the salvage belonging to the said Columbian Insurance Company, viz. $2,997.82, received by the said Catlett; and that the judgment of the circuit court, to the amount of the said sum of $6,626.18, and interest thereon from the 14th of October, 1822, be and hereby is affirmed; and as to the residue of the said judgment, be and is hereby reversed; and the cause is to be remanded to the said circuit court, with directions to enter judgment for the said Catlett accordingly; the parties in the court below to be

at liberty to open the auditor's report, so far as respects the item for $480, the proceeds of the doubloons; and the item for $719.37, paid over to Captain McKnight; and the judgment to be varied by the circuit court, as these items may be found for either party; execution, however, to be granted immediately for the balance of the judgment, deducting the said sum of $719.37."

A mandate was issued accordingly, and the cause was again brought before this court, when

CRANCH, Chief Judge, delivered the following opinion of the court:

The mandate, in this case, is understood, in effect, to require this court to render judgment in favor of Mr. Catlett, for $6,-626.18, with stay of execution as to $719.37, part thereof; and that the auditor's report shall be opened, as to the item for thirty doubloons, equal to $480, and the item for $719.37, "paid over to Captain McKnight;" "and the judgment to be varied" by this court, "as these items may be found for either party." It appears, by the mandate, that the supreme court, in adjusting the loss, have charged Mr. Catlett $2,997.82, for the underwriter's share of the net proceeds of two hundred bags of coffee sold in Baltimore, and of the $480 for the thirty doubloons. The net proceeds of the coffee were $3,151.30, and the doubloons were $480; = $3,631.30. As $12,808.25, the whole risk, is to $3,631.30, the whole amount saved and received by Mr. Catlett, so is $10,000, the underwriters' share of the risk, to $2,835.13, the underwriters' share of the amount saved.

The supreme court did not take into the adjustment the balance of the net proceeds of the cargo, paid over by Thompson and Creed to Captain McKnight, at Cape Haytien, namely, $75.02 and $719.37; = $794.39. That sum ought to have been brought into the account, whether it was received by the underwriters or by Mr. Catlett. If received by Mr. Catlett, he ought to have been charged with the underwriters' share of it; if received by them, they ought to credit Mr. Catlett with his share of them. By the auditor's report Mr. Catlett was charged with that sum, as well as with the doubloons; the supreme court have only charged him with the latter. Yet they both stand on the same ground; they were both paid over to Captain McKnight. The auditor's report was acquiesced in by Mr. Catlett, in this court, and he seemed to be satisfied with the judgment which this court gave, confirming that report. But the auditor's report has been opened again, and we are now requested to disallow the charge against Mr. Catlett for the doubloons, because, it is said, they were stolen from Captain McKnight at Cape Haytien. Captain McKnight has been reëxamined upon that point. He says he expended part of the doubloons in paying the seamen's wages, and in disbursements

and expenses concerning the ship; and that the residue, amounting to about $351, was stolen from him at the cape. If they were stolen, are the underwriters responsible? As Captain McKnight was the master of Mr. Catlett's ship, and the supercargo and consignee of Mr. Catlett's cargo, and as Mr. Catlett had accounts to settle with him for wages and compensation, as master, supercargo, and consignee, and as it is the general practice for the insured to receive the salvage in cases of abandonment, it is natural to suppose that Captain McKnight received not only the doubloons, but the balance of the proceeds of the cargo, as agent for Mr. Catlett. I think, therefore, that Mr. Catlett is answerable for whatever proceeds of the cargo were paid over to Captain McKnight. I think, also, that the twenty bags of coffee, purchased by Captain McKnight out of the proceeds of the cargo, and remitted to Baltimore with the two hundred bags, are to be considered as a remittance made on account of the underwriters; and that, as the proceeds came to the hands of Mr. Catlett, he is answerable for the net proceeds only, and not for the prime cost. But, with regard to these two points, the other judge, who heard the cause, has doubts; but they will not affect the judgment which we shall render. In order to adjust this loss, it is necessary to ascertain the value of the cargo when the ship sailed from St. Thomas for Cape Haytien. Upon the arrival of the cargo at St. Thomas, freight was earned to the amount of $1.25 per barrel.

The supreme court has decided, that the freight thus earned was not a lien upon the salvage of the cargo in the hands of the underwriters. When, therefore, the ship sailed from St. Thomas for Cape Haytien, the value of the cargo was enhanced by the whole value of the freight. This would not have been the case, if the freight had continued to be a lien upon the salvage of the cargo; for then the salvage would have been indebted to the exact amount of the benefit; but this cargo had received the benefit, and was relieved from the debt. So that it was really more valuable to the amount of the freight, as if the freight had been paid at St. Thomas, and added to the cargo. For the purpose of adjusting this loss, the voyage must be considered as commencing at St. Thomas. If half of the cargo had been sold at that island at a profit of one hundred per cent., and the proceeds invested in goods and laden on board the ship, and she had sailed with that cargo for Cape Haytien, and been lost, the value of the cargo must have been ascertained, at the time of her sailing from St. Thomas, in the usual mode; by adding to the invoice price all duties and expenses, and the premium of insurance, as well upon the new cargo taken in, as upon the remnant of the old cargo. One of the expenses allowed, in such cases, is the ex-

pense of transportation from the place where the prime cost was ascertained, or where the goods were purchased, to the place where the voyage is to commence. Marsh. Ins. 621, 622; Stev. Av. 53. Stevens says: "When the average is adjusted at the port of loading, and the freight has been paid there, the practice is to add it to the value of the cargo, in the same manner as any other charge incurred on the goods before putting them on board the ship; for the merchant has then an interest in the freight, by its being converted into a charge on the goods."

Mr. Catlett, therefore, had a fair right, in settling this loss, to add to the invoice price of the 1,788 barrels of flour on board, when the ship sailed from St. Thomas for Cape Haytien, $1.25 on each barrel, for freight from Alexandria. The flour, under the opinion of the supreme court, not being liable in the hands of the underwriters for that freight, was really worth so much more; and Mr. Catlett had as good a right, under the circumstances of this case, to charge it, as if he had paid it at St. Thomas.

Upon this principle, Mr. Catlett's interest in the cargo will stand thus:

| | | |
|---|---:|---:|
| 1,788 barrels flour, according to invoice price | | $12,328 25 |
| Freight on 1,788 barrels, earned at St. Thomas, at $1.25 | | 2,235 00 |
| Thirty doubloons | | 480 00 |
| | | $15,043 25 |
| At the risk of the underwriters | $10,000 00 | |
| "    "   Mr. Catlett | 5,043 25 | |
| | | 15,043 25 |

The amount saved is as follows:

| | | | |
|---|---:|---:|---:|
| Net proceeds of 220 bags of coffee | | | $3,517 40 |
| Thirty doubloons | | $480 00 | |
| Amount overpaid, by Thompson and Creed, on the ship | | 75 02 | |
| Balance paid by them to Captain McKnight | | 719 37 | |
| | | $1,274 39 | |
| Deduct prime cost of 20 bags coffee | $481 66 | | |
| Captain McK.'s expenses on cargo | 285 78 | | |
| | | 767 44 | |
| | | | 506 95 |
| Whole amount saved | | | $4,024 35 |

Then, as $15,043.25, the whole risk, is to $4,024.35, the whole salvage, so is $10,000, the underwriters' share of the risk, to $2,675.19, the underwriters' share of the salvage; leaving $1,349.16 for Mr. Catlett's share.

Ch. J. Catlett, in account with the Columbian Ins. Co.

Dr.

| | | |
|---|---:|---:|
| To net proceeds of 220 bags coffee | | $3,517 40 |
| " amount overpaid on ship | | 75 02 |
| " balance paid T. and C. to Captain McKnight | | 719 37 |
| " thirty doubloons | | 480 00 |
| " premium note | | 376 00 |
| | | $5,167 79 |

Supra.  .  .  .  .  .   Cr.

| | | |
|---|---:|---:|
| By your proportion of salvage | $1,349 16 | |
| " prime cost of 20 bags of coffee | 481 66 | |
| " Captain McKnight's expenses on cargo | 285 78 | |
| " policy | 10,000 00 | |
| | | $12,116 60 |
| | | $6,948 81 |
| Deduct amount paid under the mandate | | 5,907 81 |
| Balance due Ch. J. Catlett | | $1,041 00 |

If, therefore, we were at liberty to vary the judgment for $6,626.18, which we were ordered by the mandate to enter, we should render judgment in favor of Mr. Catlett for $6,948.81, instead of $6,626.18, with directions to enter a credit of $5,907.81, with interest thereon from October 14, 1822, for which execution has already been ordered under the mandate, and should order execution now for the balance, being $1,041, with interest thereon from the 14th of October, 1822, till paid. But as the mandate seems to limit the judgment to the sum of $6,626.18, and execution has been ordered for $5,907.81, we can only order execution to be issued for the balance of the judgment already rendered, namely, $719.37, and interest thereon from the 14th of October, 1822, till paid. If the court is wrong, in adding the freight earned at St. Thomas to the invoice price of the cargo, the only difference in the above statement will be, that Mr. Catlett must have credit for his share of the salvage, $882.35, instead of $1,349.16. The difference is, $466.81, which, deducted from $1,041, leaves a balance still due to Mr. Catlett of $574.19.

| | | |
|---|---:|---:|
| Judgment was entered for | | $6,626 18 |
| Amount paid under the mandate | | 5,907 81 |
| Execution ordered for | | $719 37 |
| with interest from October 14, 1822. | | |